The Commissioners of Highways, Etc.

*v.*

Thomas Newell *et al.*

1. Corporations—*power to levy taxes, etc., strictly construed.* With *quasi* corporations, such as commissioners of highways, the rule obtains that their power to impose taxes or incur indebtedness will be strictly construed. Municipal corporations have no inherent power to levy taxes, and the grant of power must be plain and unmistakable.

| 80 | 587 |
|---|---|
| 34a | 605 |
| 80 | 587 |
| 165 | 23 |
| 165 | 651 |
| 80 | 587 |
| 174 | 417 |
| 80 | 587 |
| d91a | ¹655 |
| 80 | 587 |
| 190 | ¹ 22 |
| 80 | 587 |
| 192 | ¹365 |
| 80 | 587 |
| 193 | ⁵600 |
| 80 | 587 |
| 200 | ²144 |
| 200 | ²243 |
| 201 | ⁵354 |
| 80 | 587 |
| 207 | ¹ 54 |

2. COMMISSIONERS OF HIGHWAYS—*power to levy tax.* The commissioners of highways, in discharging their duties, are required carefully to estimate the sum necessary to be expended in their township for roads and bridges for the ensuing year, and to levy the same, if it does not exceed forty cents on the $100 worth of taxable property, and return the same to the county clerk on or before the Tuesday next preceding the annual meeting of the board of supervisors, in September. They are limited to what will be required in defraying the cost of keeping in repair the roads and bridges for the ensuing year.

3. If the levy of forty cents on the $100 worth of taxable property is not sufficient, they must call upon the people to vote an additional amount, which is limited to sixty cents on the $100, or for power to borrow money.

4. SAME—*power to contract debts.* The commissioners of highways being powerless to borrow money, are equally so to contract indebtedness, except that they may have such work done and repairs made, and give orders on their treasurer, to the extent and not beyond the amount of tax already actually levied by them. After this levy is made they may incur indebtedness in the discharge of their duties, before its collection.

5. SAME—*when estimate to be made.* The fiscal year commences with the Tuesday preceding the annual September meeting of the county board, and it is at that time the commissioners are required to make their estimates, and levy of the tax, to meet the expenses until the corresponding period of the next year.

6. The commissioners of highways have no legal power to incur indebtedness for road and bridge purposes, in any fiscal year, beyond the amount of the taxes already levied for that year. In other words, they can in no one year expend lawfully more than the tax levied for that year.

7. ROAD TAX—*application on prior indebtedness.* The road and bridge tax levied for any given year is legally applicable in payment for labor performed and expenditures made on the roads and bridges during that fiscal year, and can not rightfully be applied to any other purpose, even to the payment of prior indebtedness.

8. Where the commissioners of highways, in 1874, levied a tax of forty cents on the $100 worth of taxable property, which amounted to $1782.39, there being a prior indebtedness of $1600 unpaid, and during the year and before the tax was collected, contracted for the erection of piers for a bridge, it was held that they had the legal authority to make such contract and pay the contractor out of the tax levied, when collected, without reference to the prior indebtedness.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. Douglass & Harvey, for the appellants.

Messrs. Williams, McKenzie & Calkins, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was a bill filed in the Knox circuit court, to restrain the road commissioners of Chestnut township from erecting the piers and making the approaches for a bridge on Spoon river, then being built, and from incurring any liability by the town therefor. The bill alleges that the supervisor of the town had petitioned the board of supervisors of the county for aid in constructing a bridge in that town, at Bridgeport, and that the board of supervisors had agreed to build an iron bridge, if the town and individuals interested would construct the piers and approaches for the same; that the cost of the piers would be $1200; that the town was indebted the sum of $900, and there was no money in the treasury subject to the order of the commissioners; that at the annual town meeting in 1874, the indebtedness of the town for road and bridge purposes was $1600, and for ordinary expenses $900; that there was levied a tax for that year of forty cents on each $100 worth of taxable property in the township, for road and bridge purposes; that this levy would yield $1782.39, leaving a balance of only $182.39 for roads and bridges, after paying the debt already incurred for such purposes; that no steps had been taken to levy an additional tax for such purposes, or to borrow money therefor, as provided by law, and the building of the bridge, under the circumstances, is contrary to law; that the road commissioners had let the contract to one Walters, who had hauled some stone to be used in building the piers, and that he had entered on the performance of the contract.

The answer admits that the work would cost $1200, and alleges that the approaches were to be built by private subscription; admits the indebtedness of the township, as alleged in the bill; admits that the commissioners had made the contract, and that Walters had entered upon its perform-

ance.   They admit that no steps had been taken to raise a tax in addition to the forty cents levied on the $100 valuation, and insist that it was not necessary to defray the charge of building the piers, as the amount can be raised by a tax of forty cents on the $100 valuation of the property in the township.

A supplemental bill was filed, alleging that the piers had been completed, and that, unless restrained, respondents would obtain payment out of the funds of the township; that the commissioners have no right to appropriate, of such funds, more than $180 for the purpose, and that it had been paid to the contractor.   It is alleged that the contract was void, and this supplemental bill prays that the commissioners be restrained from paying anything on the contract, and from pledging the faith of the township therefor, and the contractor from collecting or receiving payment for the same.

An answer was filed, admitting the completion of the piers, but denying that the contract was void, and averring the right of the commissioners to pay for the work, when there should be funds in the treasury.   On the trial it appeared that there was, at that time, no indebtedness against the township beyond $400, and that there was money in the treasury beyond all liability; and that an iron superstructure had been placed on the piers, and they were accepted by the county, and the bridge thus completed.

The case was tried by the court below on the bill, supplemental bill, answers, replications and proofs, when the court rendered a decree declaring the contract void, and enjoining the contractor from ever receiving any payment from the township, for labor done or materials furnished in the erection of these piers, and restraining the commissioners of highways from paying the same, or incurring any liability of the township therefor.   And the defendants have appealed to this court, and ask a reversal of the decree.   A petition for a rehearing having been presented, since the opinion was filed herein, on its consideration, we have deemed it proper to modify, somewhat, the grounds for our decision.

It is insisted, in affirmance of the decree, that the 120th section of the Road Law, chapter 121, R. S. 1874, p. 932, limits the power of the highway commissioners to levy only forty cents tax on the $100 valuation of the taxable property in the township; that they must ascertain, as near as may be, the expenses necessary to be incurred for road and bridge purposes, for the ensuing year, and make a levy to meet the same, of not exceeding 40 cents on the $100 valuation of property. If that will not produce the necessary amount, that a town meeting must be called, as therein provided, to authorize an additional levy. Or a vote must be had under the 112th section, to license the commissioners to borrow money. That the commissioners have no power to incur an indebtedness for road or bridge purposes; that they must confine their expenditures to the sum thus raised, or to money borrowed in pursuance to the 112th section of the act; that the General Assembly has not conferred power on them to incur a debt for the construction or repair of roads or bridges, and in the absence of legislative authority, they can not exercise the power; that these commissioners can not have such work done in anticipation of a tax to be levied for the ensuing year, and having made this contract when there was no funds in the treasury to meet the expense, or tax then levied therefor, that this was in excess of the authority conferred on the commissioners, and the contract is void.

When officers of the law are charged with the performance of a duty, the law usually either expressly confers the means or implies that they may exercise the power to accomplish the object required. Here these commissioners are expressly charged with the duty of making and repairing the roads and bridges in their township; and the means conferred is the power to levy and collect a tax on the property of individuals in the township; and they are expressly required, annually, as near as may be practicable, to ascertain what sum will be necessary for the purpose, and to levy and return to the county clerk a tax for the purpose, that he may extend the same as other taxes for collection. But the commissioners are expressly

limited in making such levy to forty cents on the $100 worth of taxable property in the town. (See section 120, chapter 121, R. S. 1874.) The same section provides that if the commissioners of highways, or any three legal voters, shall give notice, etc., before the annual town meeting, that a larger amount of money will be required for road and bridge purposes than can be realized from the tax authorized to be assessed by the commissioners, the legal voters at such meeting may authorize an additional amount to be raised, not exceeding sixty cents on the $100 valuation of taxable property. Thus, it is seen that the commissioners are limited to forty cents and the people to sixty cents additional, as a tax on the property in the town, for such purposes.

The town is authorized, by the 112th section, to borrow money for the purpose of building a bridge, in the manner therein provided. None of these provisions, nor are we aware of any others, authorize these commissioners to levy a larger tax, or to borrow money for road and bridge purposes. The 115th section authorizes the commissioners to contract for the construction of bridges in their towns, in the manner therein prescribed. The 116th section provides that the collectors of taxes shall receive from any tax-payer, in satisfaction of his road and bridge tax, any order of the commissioners of highways on their treasurer, given for work done, or materials furnished for the construction or repair of the highways or bridges, in any sum not exceeding the amount of such person's road and bridge tax then due. These are the means with which the commissioners of highways are clothed and empowered to perform their duties in keeping the roads and bridges in repair in their several townships.

From the provisions of the 116th section, and the other provisions of the law, it is manifest that the commissioners may, after they have levied the road and bridge tax, proceed to its expenditure for the purposes for which it was levied, in anticipation of its collection. But we fail to find any provision of the statute from which it may be inferred that it was designed to empower them to incur any indebtedness beyond the amount

already levied.   With *quasi* corporations of this character the rule obtains that their power to impose taxes or incur indebtedness will be strictly construed.

In his able work on taxation, at page 209, Judge Cooley says: " In the construction of any grant of power to tax, made by the State to one of its municipalities, the one which is accepted by all authorities is, that it should be with strictness.   The reasonable presumption is held to be that the State has granted, in clear and unmistakable terms, all it has intended to grant at all; and whatever authority the municipal officers assume to exercise, they must be able to show their warrant for, in the words of the grant.   There is no inherent power in municipalities to levy taxes; they can tax only as the State, in its wisdom, has thought proper to permit, and if the State has erred in the direction of strictness, the legislature, alone, can correct the evil."   Now, how has the General Assembly permitted these commissioners to exercise the power? By carefully estimating the sum that will be required to be expended in their township for roads and bridges for the ensuing year, and by levying the same, if it does not exceed forty cents on the $100 worth of taxable property, and returning the same to the county clerk, on or before the Tuesday next preceding the annual meeting of the board of supervisors in September.   Now, this provision of the 120th section limits the amount they may levy to what will be required in defraying the expenses of keeping in repair the roads and bridges for the ensuing year, till the next September; and they are, before the levy is made, to estimate the amount.

If the levy of forty cents on the $100 worth of taxable property is not sufficient for the purposes required, they must then call upon the people to vote an additional amount, as provided in the same section, or for power to borrow money, as provided for in the 112th section.   They, therefore, are powerless to borrow money, and it would seem to follow that they are equally powerless to incur indebtedness.   If they may do so, then they may do what the law never tolerates, indirectly, what they have no power to do directly.   Were it

38—80th Ill.

not for the 116th and other sections, these commissioners would be compelled to have the money in the treasury before making any contract, or having work done, materials purchased or repairs made. But the law, by implication, authorizes them to have such work done, and repairs made, and to give orders on their treasurer for its payment, when there is no money in the treasury. But it is, considering all the legislation on the subject, the manifest intention of the law, that they shall have already levied a tax out of which such work, repairs and materials may be paid, when such expense is incurred.

The fiscal year seems, from these enactments, to commence with the Tuesday preceding the annual September meeting of the county board. It is at that time they are required to make their estimates and levy of the tax to meet the expense of keeping in repair the roads and bridges until the corresponding period of the next year. This is the purpose and the extent of the levy they are authorized to make. It, then, follows that they have no power to legally incur an indebtedness for road and bridge purposes beyond the amount of the taxes already levied for that year. In other words, they can in no one year expend, lawfully, more than the amount levied for that year.

Appellees urge, and it seems to be conceded, that, when the commissioners made the levy in 1874, the township owed, on account of roads and bridges, $1600, and the tax then levied amounted to $1782.39, and they contend, and the court below seems to have held, that $1600 of this latter amount was necessary to pay, and should be paid, on the indebtedness incurred prior to the first of September, 1874, and for the payment of which no fund had been provided.

The tax which was levied in September, 1874, was all of it legally applicable to the payment for labor performed and expenditures made on the roads and bridges after its levy and before the next levy was made, in September, 1875; nor could the tax thus levied and collected be rightfully applied to any other purpose.

The contract for the erection of these piers was made and entered into after the tax was levied in September, 1874, and from what we have said, it will be seen that these commissioners had legal authority to make this contract, which was fully within the scope of their authority; and the levy having already been made, and the fund for its payment thus provided, the commissioners could appropriate so much of that fund as was necessary to pay for the erection of these piers. It was work done during the year for which the tax was levied, and the fund could be rightfully appropriated to its payment and to other road expenses incurred during the year. The commissioners had not exceeded their authority in making this contract, and it was legal, just and proper that they should have paid for the same, and it was error to restrain them from so doing.

The case of the *City of Galena* v. *Corwith*, 48 Ill. 423, is referred to by appellant's counsel as governing this in principle. A corporation of that character is created for different purposes than this, and whatever may have been there said, does not, therefore, apply to corporations of this character. Hence it follows that case is not authority in this, and by no means governs or controls it.

The decree of the court below, for the errors indicated, must be reversed and the cause remanded.

*Decree reversed.*

Mr. Justice Breese: I can not concur in the argument or conclusions of this opinion. I do not think the statute gives the power to these petty township officers to incur liabilities of this kind. The only safe rule is, to forbid them to make contracts involving the payment of money, unless the money is in the treasury. Disastrous consequences, I apprehend, will follow this decision.

Mr. Justice Sheldon: I concur in the above dissent, with the exception of admitting the right of commissioners of highways to contract and issue orders to the extent contemplated by section 116 of the Road and Bridge Act, of being receivable in payment of a person's road and bridge tax.